IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

JOHNNY POSTLES,

    Plaintiff,

v.                                                                        No. 1:23-cv-01063 STA-jay

CITY OF JACKSON, TENNESSEE

    Defendant.

---

## REPORT AND RECOMMENDATION

---

Plaintiff filed this pro se Complaint on April 19, 2023. (ECF No. 2.) This case has been referred to the United States Magistrate Judge for management of all pretrial matters and for determination and/or report and recommendation as appropriate. Admin. Order 2013-05. Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to conduct a screening of the Complaint because Plaintiff sought and received in forma pauperis status. (ECF No. 8.) For the reasons that follow, the undersigned **RECOMMENDS DISMISSAL** of Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### I.    PROPOSED FINDINGS OF FACT

Plaintiff Johnny Postles is employed by the City of Jackson as a Groundskeeper. (*See generally* ECF No. 2; ECF No. 2-7, p. 1, PageID 15.) On November 30, 2020, Plaintiff, who is over the age of 40, was reassigned from being the driver of a leaf collection truck to being part of the leaf collection ground crew. (ECF No. 2-2, p. 1, ¶ 1, PageID 9.) The leaf collection ground crew is, according to Plaintiff, a "dirtier" and "harder" position than being the leaf collection truck driver. (*Id*. at fn. 2.) Plaintiff's supervisor reassigned a younger member of the crew to drive the

1

truck and told Plaintiff that he wanted the other crew member to get some practice driving the truck. (*Id*. at ¶ 2.) Approximately one week later, Plaintiff asked his supervisor how much longer the younger crew member would be practicing as a truck driver. (*Id*. at ¶ 3.) Plaintiff's supervisor told Plaintiff he did not know how much longer the younger crew member would be driving and asked Plaintiff why he asked. (*Id*.) Plaintiff responded that he felt that he was being discriminated against. (*Id*.) Plaintiff's supervisor then "warned Plaintiff 'against making trouble." (*Id*.) The younger crew member remained the truck driver for the rest of the 2020-2021 leaf collection season while Plaintiff remained on the ground crew. (*Id*. at ¶ 4.)

As the 2021-2022 leaf collection season began on November 1, 2021, Plaintiff was again assigned to being a part of the leaf collection ground crew while another yet different younger crew member was assigned to be the leaf collection truck driver. (*Id.* at ¶ 6.) "Overwhelmed with anxiety and depression" from being again assigned to his non-desired position, Plaintiff took Family Medical Leave Act leave beginning on November 2, 2021, and made a complaint of discrimination to Human Resources. (*Id*. at ¶ 7, ECF No. 2-6, PageID 14.)

Plaintiff alleges that at some unknown time after he filed his November 2, 2021, discrimination complaint but before December 21, 2021, his supervisor provided false information to the Human Resources Director in the course of her investigation of Plaintiff's discrimination complaint. (ECF No. 2-2, ¶¶ 10-11, PageID 10.) Plaintiff avers that his supervisor incorrectly stated that Plaintiff had only been temporarily reassigned from the leaf collection truck to the leaf collection ground crew, and that Plaintiff and his crew had been "caught" outside Plaintiff's assigned work area at least six times over the course of four weeks though no resulting disciplinary action had been taken against him. (*Id*.)

In a memo dated December 21, 2021, the Director of Human Resources responded to Plaintiff's November 2, 2021, discrimination complaint. (ECF No. 2-6, PageID 14.) The Director stated that she had investigated Plaintiff's complaint and noted that Plaintiff had not been replaced as a driver but that other crew members had been tasked with being drivers so that they could gain driver experience, and that Plaintiff had not been following "the process that had been in place" as he had been "'caught' out of [his] areas on several occasions." (*Id.*) The Director included in the memo her findings: that no discrimination had occurred; Plaintiff's pay had not been affected; all employees, including Plaintiff, may be assigned to different duties by their supervisors; and no disciplinary action had been taken against Plaintiff. (*Id.*)

Plaintiff alleges that his supervisor again made an incorrect statement to the Human Resources Director at some unknown time prior to December 28, 2021, in which his supervisor stated that Plaintiff's placement on the leaf collection ground crew was temporary and that that his position remained open while Plaintiff was on FMLA leave and that Plaintiff could return to it when he was able to come back to work. (ECF No. 2-2, ¶ 12, page 2, PageID 10.) On December 28, 2021, the Human resources Director wrote Plaintiff an email in which she stated that Groundskeeping positions "are not assigned by age, race, or any other non-merit factor". (ECF No. 2-7, PageID 15.) The email continues that Plaintiff has not been replaced and that his position is still open whenever he is able to return to work. (*Id.*) The Director noted that there were other City positions available and that as it appeared that Plaintiff was unhappy in his current position, he may want to apply for a different position within the City. (*Id.*)

On January 13, 2022, Plaintiff emailed the Human Resources Director requesting a transfer or reassignment. (ECF No. 2-5, PageID 13.) Plaintiff attached a letter from a licensed professional counselor stating that Plaintiff was being treated for anxiety and depression "resulting from

discrimination against him and threats at the work place." (ECF No. 1, PageID 1.) The counselor recommended in her letter that Plaintiff be placed in a different department with difference co-workers. (*Id*.) Plaintiff claims that no response to his January 13, 2022, email was received. (ECF No. 2-2, p. 2, ¶ 9, PageID 10.)

Plaintiff returned to work on January 25, 2022. (ECF No. 2-2, p. 2, ¶ 13, PageID 10.) Plaintiff, however, still was assigned to the leaf collection ground crew. (*Id*.) On February 4, 2022, Plaintiff sent his supervisor a text message asking why he was not given his driver position back. (ECF No. 2-8, PageID 16.) Plaintiff's text message went unanswered. (*Id*.) Finally, when the 2022-2023 leaf collection season began on November 1, 2022, Plaintiff and the younger crew member who was assigned to the leaf collection truck driver were both listed as the leaf collection truck drivers. (*Id*. at p. 1, fn. 3, PageID 9; p. 2, ¶ 16, PageID 10; ECF No. 2-9, PageID 17.)

In his Complaint, Plaintiff alleges that he was discriminated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. (ECF No. 2 at p. 1, PageID 2.) Plaintiff indicated that the discriminatory conduct he complains of was through acts of retaliation and age discrimination. (*Id*. at p. 3, PageID 4.) Plaintiff attached to his Complaint a right-to-sue letter from the EEOC dated January 31, 2023. (ECF No. 2-1, PageID 8.)

## II.    SCREENING STANDARD

The Court is required to screen in forma pauperis complaints and to dismiss any complaint, or any portion thereof, if the action:

> i. is frivolous or malicious;
> ii. fails to state a claim on which relief may be granted; or
> iii. seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In assessing whether the Complaint in this case states a claim on which relief may be granted, the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 667-79, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009), and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1964-66, 167 L. Ed. 2d 929 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1951) (alteration in original). "[P]leadings that are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1950; *see also Twombly*, 550 U.S. at 555 n.3, 127 S. Ct. at 1964-65 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), *reh'g denied* (Jan. 19, 1990); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518

5

F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Secretary of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231, 124 S. Ct. 2441, 2446, 159 L. Ed. 2d 338 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants.").

Under § 1915(e)(2)(B), the Court has the discretion to refuse to accept allegations in a complaint that are "clearly baseless," a term encompassing claims that may be described as "fanciful, fantastic, delusional, wholly incredible, or irrational." *Bumpas v. Corr. Corp. of America,* No. 3:10–1055, 2011 WL 3841674, at *8 (M.D. Tenn. Aug. 30, 2011) (citing *Denton v. Hernandez,* 504 U.S. 25, 32–33 (1992)). Furthermore, "a district court may, at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir.1999).

### III.    PROPOSED CONCLUSIONS OF LAW

A.    Title VII of the Civil Rights Act of 1964.

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Plaintiff asserts a claim of retaliation under Title VII.  "To state a claim of retaliation under Title VII, a plaintiff must allege that: (1) he acted in a manner protected by Title VII; (2) the defendant knew of this exercise of protected activity; (3) the defendant subsequently took an adverse action against

Case 1:23-cv-01063-STA-jay   Document 10   Filed 08/23/23   Page 7 of 10
                       PageID 36

him; and (4) the adverse action had a causal connection to the protected activity." *Hood*, 2018 WL 2387102, at *5 (citing *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)). "[T]here are two types of 'protected activity' for purposes of a Title VII retaliation claim: (1) 'oppos[ing] any practice made an unlawful employment practice' by Title VII, and (2) making a charge, testifying, assisting, or participating in an 'investigation, proceeding, or hearing' under Title VII." *Id.* (quoting 42 U.S.C. § 2000e-3(a)).

In his Complaint, Plaintiff makes no allegations that he was discriminated against on the basis of his race, color, religion, sex, or national origin.  Instead, Plaintiff alleges that he was discriminated and retaliated against on the basis of his age.  Title VII, however, neither addresses nor does it prohibit age discrimination.  42 U.S.C. § 2000e, *et seq.*  The Age Discrimination in Employment Act ("ADEA") bans age discrimination in employment against persons over 40 years of age, 29 U.S.C. §§ 623(a)(1), 631(a), and provides the exclusive remedy for age discrimination. *See Weatherby v. Fed. Express*, No. 07-2606-JPM-TMP, 2009 WL 10674786, at *4 (W.D. Tenn. July 24, 2009), *aff'd sub nom. Weatherby v. Fed. Exp.*, 454 F. App'x 480 (6th Cir. 2012); *see also Hollowell v. Cincinnati Ventilating Co.*, 711 F. Supp. 2d 751, 774 fn. 13 (E.D. Ky. 2010).  Because Plaintiff has failed to allege that he was discriminated or retaliated against on any bases prohibited by Title VII, and because Plaintiff has asserted an age discrimination claim under the ADEA, the Magistrate Judge **RECOMMENDS** that Plaintiff's Title VII claim be **DISMISSED**.

      B.     <u>Age Discrimination in Employment Act of 1967 ("ADEA").</u>

The ADEA "prohibits an employer from 'discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Russell v. AAA Limo*, No. 2:15-cv-02455-JPM-tmp, 2016 WL 874770, at *4 (W.D. Tenn. Feb. 17, 2016) (quoting 29 U.S.C. § 623(a)(1)).  Pleading disparate treatment under the ADEA requires a

                         PageID 37

plaintiff to allege that "the employer acted with the intention of discriminating on the basis of age." *Abbot v. Federal Forge, Inc.*, 912 F.2d 867, 871 (6th Cir. 1990). This can be accomplished by "alleging direct evidence of discrimination, or [ ] by alleging circumstantial or indirect evidence from which discrimination can be inferred." *McKnight v. Gates*, No. 3:06-1019, 2007 WL 1849986, at *10 (M.D. Tenn. Jun. 20, 2007).

"Direct evidence is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Lautermilch v. Findlay City Schools,* 314 F.3d 271, 275–76 (6th Cir.2003) (quoting *Laderach v. U–Haul of Northwestern Ohio,* 207 F.3d 825, 829 (6th Cir.2000)). "Rarely will there be direct evidence from the lips of the defendant proclaiming his or her [discriminatory] animus." *Robinson v. Runyon,* 149 F.3d 507, 513 (6th Cir.1998); *Kline v. Tennessee Valley Authority,* 128 F.3d 337, 348 (6th Cir.1997) ("It is the rare situation when direct evidence of discrimination is readily available, thus victims of employment discrimination are permitted to establish their cases through inferential and circumstantial proof."). "[Direct] evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are [over the age of 40].'" *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir.1998).

"If a plaintiff cannot prove discriminatory intent by direct evidence, he may do so by making a *prima facie* case of age discrimination through indirect or circumstantial evidence." *Lefevers v. GAF Fiberglass Corp.,* 667 F.3d 721, 725 (6th Cir.2012). An ADEA plaintiff proceeding based upon circumstantial evidence must prove that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he suffered an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by someone outside the protected class. *Geiger v. Tower Automotive,* 579 F.3d 614, 622-23 (6th Cir. 2009).

In the present case, Plaintiff satisfies the pleading requirements that he was over the age of 40, was qualified for the leaf truck driver positions, and was replaced by someone outside the protected class. Plaintiff, however, fails to establish that his reassignment from driving the leaf collection truck to being part of the leaf collection ground crew during the 2020-21 and 2021-22 leaf collection seasons amounted to an adverse employment action. While Plaintiff alleges that the leaf collection ground crew position is a "dirtier" and "harder" position than being the leaf collection truck driver, an employee's "subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004) (citing *Policastro v. Nw. Airlines, Inc.,* 297 F.3d 535, 539 (6th Cir. 2002), *Henry v. Ohio Dept. of Mental Retardation & Dev. Disabilities,* 162 F.Supp.2d 794, 801 (S.D.Ohio 2000)). Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions. *Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir.1996). Plaintiff makes no allegation that his pay was cut, his hours were reduced, or that his benefits changed in any way while he was assigned to the leaf collection ground crew. Plaintiff's fails to allege facts as to whether his reassignment to the leaf collection ground crew position was a materially adverse employment action, and, therefore, fails to establish this element of his prima facie case of employment discrimination. Accordingly, the Magistrate Judge **RECOMMENDS** that Plaintiff's ADEA claim be **DISMISSED**.

## IV.   RECOMMENDATION

For the reasons above, it is recommended that the Court dismiss Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Respectfully submitted this the 23d day of August, 2023.

                                            <u>s/Jon A. York</u>
                                            UNITED STATES MAGISTRATE JUDGE

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**